J-A10037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH PHYSICIAN NETWORK, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES M. MANGANIELLO, M.D. | : | |
| Appellant | : | No. 175 MDA 2021 |

Appeal from the Order Entered December 29, 2020
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2020-04496

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

DISSENTING MEMORANDUM BY PANELLA, P.J.:**FILED NOVEMBER 21, 2022**

While I agree that discovery is to be liberally allowed so long as it may reasonably lead to the revelation of admissible evidence, it is equally true that "no effective system of discovery can be designed which is not subject to abuse." Explanatory Comments to the Rules of Civil Procedure, Depositions and Discovery – 1978. Abuse prevention relies primarily on self-discipline amongst the bar. *See id*. However, where attorneys are not disciplined, the courts must act to prevent abuse. *See id*.

At the outset, I emphasize that I do not conclude that Commonwealth is attempting to abuse the system, nor that the majority is condoning such conduct. Rather, I write to highlight that abuse prevention is impossible where courts do not exercise at least a modicum of control over the system. As a baseline, then, courts must scrupulously ensure that all discovery requests

comply with Pa.R.Civ.P. 4003.1(b): that all discovery requests must be reasonably calculated to lead to the discovery of admissible evidence. While this hurdle is quite low, it is not non-existent. After reviewing the record here, I conclude that Commonwealth is unable to clear the Rule 4003.1(b) hurdle, and I therefore dissent.

Here, Manganiello challenges the trial court's orders granting Appellee's discovery requests, despite, upon my review, Appellee's failure to establish a compelling need for the discovery documents requested, which purportedly include privileged materials and private information relating to Manganiello's patients and unrelated business decisions. Manganiello argues that the discovery requests in issue are impermissibly vague, overly broad because they address factual matters which are not relevant at this stage of the litigation, and are therefore not reasonably calculated to lead to the discovery of evidence admissible at this time. Most importantly, in my opinion, until there is a disposition by the trial court that Manganiello breached the contracts with Commonwealth, as alleged by Commonwealth in its Second Amended Complaint, the discovery requests are premature and are designed to invade Manganiello's personal business dealings and handling of his patients. Simply stated, Commonwealth's requests seek information not discoverable until Commonwealth establishes that Manganiello breached the contracts; until that time, this personal and business information is protected by Manganiello's privacy rights. "Our Supreme Court has recognized that the

privacy interests protected by the federal Constitution receive the same protections from Pennsylvania's Constitution." **Jones v. Faust**, 852 A.2d 1201, 1203 (Pa. Super.2004).

> Cases concerning the constitutional right to privacy involve two separate interests: (1) the individual interest in avoiding disclosure of personal matters; and (2) the interest in making certain kinds of important decisions. *Id.* at 1205–06. However, "the right [to privacy] is not an unqualified one; it must be balanced against weighty competing private and state interests." *Id.* at 1207 (quoting **Stenger v. Lehigh Valley Hospital Center**, 530 Pa. 426, 434, 609 A.2d 796, 800 (1992)).

**Berkeyheiser v. A-Plus Investigations, Inc.**, 936 A.2d 1117, 1125–26 (Pa. Super. 2007).

This interlocutory appeal arises from Commonwealth's Second Amended Complaint, which alleged that Dr. Manganiello breached several contracts with Commonwealth. The first contract is an asset purchase agreement, which includes a non-compete clause. The second contract is an employment contract which contains a confidentiality agreement. The asset purchase agreement directly referenced the employment agreement.

Commonwealth alleged that Dr. Manganiello breached the employment agreement by, among several other allegations, using a non-licensed person to authorize his prescriptions to patients. As a result, Commonwealth notified Dr. Manganiello on January 14, 2020, that it was suspending his employment pending an investigation. Shortly thereafter, Commonwealth concluded that Dr. Manganiello was not cooperating with its investigation and notified Dr.

Manganiello that it would terminate his employment after the appropriate notice period.

Commonwealth subsequently initiated this action, seeking to enjoin Dr. Manganiello's continued practice of medicine within the area covered by the asset purchase agreement's non-compete clause. Commonwealth also sought liquidated damages for the breach of each agreement.

Dr. Manganiello has conceded that he continued to practice medicine after Commonwealth's notice. He contends that since it was Commonwealth who first breached the contracts, he was no longer bound by the non-compete agreement.

So, right from the start, the universe of relevant evidence in this matter is constricted. The only legal issue in dispute which is relevant at this stage of the litigation is whether there was a breach of the contract by either party. As such, the only material factual issues in dispute are Commonwealth's allegations that Dr. Manganiello materially breached the employment contract before Commonwealth suspended his employment.

The universe of relevant evidence is further restricted by Commonwealth's election of liquidated damages:

> [P]arties who agree to include a liquidated damages clause in their contract, and do so properly, cannot later claim entitlement to actual damages; rather, in keeping with the law of contracts, the parties must be bound by their bargain. This is true whether the complaint avers that the amount of liquidated damages is insufficient to fully compensate or excessive in light of the actual damage caused.

*Carlos R. Leffler, Inc. v. Hutter*, 696 A.2d 157, 162 (Pa. Super. 1997).

Combined with Commonwealth's election to seek an injunction pursuant to the non-compete clause, the amount of monetary damages should Commonwealth prevail is not in material dispute.[1]

With this knowledge in mind, I turn to Commonwealth's proposed discovery requests.

In Request for Production 1, Commonwealth requested "all employee time and payroll records of [Dr. Manganiello's current office] reflecting time that you or any individual working to support your medical practice … have worked or payments made to any employee working to support your medical practice from January 1, 2020, to the present." Based on the pleadings of both parties, there is no indication that Dr. Manganiello operated out of his current office until well after January 14, 2020. Therefore, this information cannot lead to admissible evidence on the issue of whether Commonwealth had cause to suspend Dr. Manganiello on January 14, 2020. This request is not reasonably calculated to lead to admissible evidence.

In Request for Production 2, Commonwealth requested "a copy of any appointment diary, chronology, log, calendar, appointment book, or schedule reflecting medical care that you provided or were scheduled to provide which

---

[1] Even in the absence of a conclusion that the "gist" of Commonwealth's action sounds in contract, the election of liquidated damages would foreclose Commonwealth's claim for tortious interference with contractual relations.

was kept by you or any individual on your behalf from January 1, 2020 to the present." Given the only material dispute of fact concerns whether Dr. Manganiello breached the contracts prior to January 14, 2020, this request is overbroad. While there is some remote possibility that patient appointments after January 14, 2020, could lead to admissible evidence, that is not the standard set forth in the Rules. The standard is whether the request appears reasonably calculated to lead to admissible evidence. Without more justification from Commonwealth, I conclude the request for information about patients beyond January 14, 2020, does not appear to be reasonably calculated to lead to admissible evidence.

In Request for Production 3, Commonwealth sought "all documents concerning, evidencing or reflecting any communication between you (or any individual on your behalf) and any current or former CPN employee, including without limitation Cheri Rash, from January 1, 2020, to the present." The trial court concluded that this request was relevant to the question of whether Dr. Manganiello solicited Commonwealth's clients in contravention of the non-compete clause. As I have already noted, this is not a subject of material dispute. Without a different rationale from Commonwealth, I cannot conclude that this request is reasonably likely to lead to admissible evidence on the sole factual dispute of whether Dr. Manganiello breached the employment agreement prior to January 14, 2020.

In Request for Production 4, Commonwealth requested "all documents concerning, evidencing, or reflecting any communication from January 1, 2020, to the present between you (or any individual on your behalf) and any individual whom you treated while employed by CPN." Once again, only communications to patients from January 1 to January 14 could reasonably be expected to lead to admissible evidence. Without more justification from Commonwealth, the request for documents generated after January 14, 2020 does not appear to be reasonably calculated to lead to admissible evidence.

In Request for Production 5, Commonwealth requested "all documents concerning, evidencing, or reflecting any communication between you (or any individual on your behalf) and any media outlet, including without limitation any print or digital publication, from January 1, 2020 to the present." Similar to Request 3, the trial court ruled that this request was relevant to Commonwealth's claims that Dr. Manganiello was soliciting clients for his separate practice after January 14, 2020. However, as noted previously, this is not in dispute. I fail to see how this request could be reasonably calculated to lead to admissible evidence on the issue of whether Dr. Manganiello breached the employment contract before January 14, 2020.

In Request for Production 6, Commonwealth sought "all documents reflecting the status of your employment with [Commonwealth] that you or any person on your behalf received from any agent, employee or representative of [Commonwealth] from January 1, 2020 to the present." At

the outset, I once again fail to see how this request is reasonably calculated to lead to admissible evidence on the issue of whether Dr. Manganiello breached the employment agreement prior to January 14, 2020. Above and beyond this issue, however, is that even if it were reasonably calculated to lead to admissible evidence, it is improper. ***See Eigen v. Textron Lycoming Reciprocating Engine Div.***, 874 A.2d 1179, 1189 n.14 (Pa. Super. 2005) (noting that discovery does not require "a party to supply, at its own expense, information already under the control or readily available to the opposing party"). This request seeks documents generated by Commonwealth agents and sent to Dr. Manganiello. These documents are at least as available to Commonwealth as they are to Dr. Manganiello, and to request them from Dr. Manganiello through discovery is an abuse of the process.

Request for Production 7 is the reciprocal of Request 6: it seeks all documents Dr. Manganiello or his agents sent to Commonwealth regarding his employment with Commonwealth from January 1, 2020, to the present. For all of the reasons just discussed regarding Request 6, I would conclude this request cannot lead to admissible evidence and is further an abuse of the discovery process seeking documents equally in the possession of Commonwealth.

Request for Production 8 sought "all documents concerning … any communication between you (or any individual on your behalf) and any insurance agent, broker, or provider regarding insurance coverage for your

medical practice[.]" The trial court overruled Dr. Manganiello's objection to this request, concluding the request was relevant to establishing whether Dr. Manganiello established a practice in contravention of the non-compete provision. As noted previously, that issue is not in dispute. And, in the absence of another reason for its relevance, I cannot conclude the request is reasonably calculated to lead to admissible evidence.

In Request for Production 9, Commonwealth requested "all documents concerning … any communication between you [or any agent] and any accountant regarding your medical practice from January 1, 2020, to the present." Once again, the trial court overruled Dr. Manganiello's objection to this request by concluding that it was relevant to the issue of whether Dr. Manganiello sought to establish a medical practice in contravention of the non-compete clause. As before, I conclude this was error, as there is no dispute that Dr. Manganiello in fact established such a practice – the only factual issue is whether he was entitled to do so due to his allegation that Commonwealth was already in breach of the contract.

Request for Production 10 fails for similar reasons. Request 10 sought "all documents concerning … any communication between you [or any agent] and any business consultant regarding your medical practice from January 1, 2020, to the present." The trial court found that this request was relevant to the issue of whether Dr. Manganiello opened a new medical practice and solicited clients in violation of the non-compete provision. As set forth before,

this is in fact not relevant to any factual dispute in this matter, and the trial court's reasoning constitutes error.

Requests 11 and 12 sought all documents pertaining to office or medical supplies and equipment from January 1, 2020, through January 14, 2020. I conclude that these requests are generally relevant, as they are limited in time to a period before January 14, 2020. However, they are still overbroad, in that any documents relating to business and medical supplies that were left in Commonwealth's possession when Dr. Manganiello was suspended are not relevant to whether Dr. Manganiello was breaching the employment contract during that time. The proper scope of this request is for documents from January 1 to 14, 2020, pertaining to office or medical supplies later used in Dr. Manganiello's separate practice.

Request for Production 13 is similarly generally relevant but overbroad. It sought "all documents concerning … any communication between you [or your agent] and any agent or employee of Geisinger Health System regarding your medical practice from January 1, 2020, to the present." For the period of January 1 to 14, 2020, this request is relevant and reasonably calculated to lead to admissible evidence. Beyond January 14, 2020, however, these documents become only remotely likely to lead to relevant, admissible evidence. Without more justification, I would conclude that this request is properly limited to January 1 to 14, 2020.

Request for Production 14 requested "all documents concerning … any efforts by you [or your agent] to incorporate any business between January 1, 2020 and the present." For all the reasons I have already set out above, this request is only relevant to the period of January 1 to 14, 2020. For the period after January 14, 2020, this request is not reasonably calculated to lead to admissible evidence.

Request 19 sought "all documents … that you believe support your belief that [Commonwealth] "further materially breached the Agreement on January 14, 2020[.]" Dr. Manganiello identified two such documents, one of which has already been produced to Commonwealth. The remaining document is the January 14, 2020 letter from Commonwealth to Dr. Manganiello informing Dr. Manganiello that he was suspended. Dr. Manganiello was not required to produce this document as it was equally available to Commonwealth. **See Eigen**, 874 A.2d at 1189 n.14.

In Request 24, Commonwealth sought "all documents … that you believe support your denial "that [you were obligated, or refused to participate in [Commonwealth's] purported 'compliance investigation,'" as alleged in Paragraph 55 of your Answer to Motion for Preliminary Injunction." Dr. Manganiello identified 11 total documents, which he alleged are already in the possession of Commonwealth. Ten of these documents are letters from Dr. Manganiello's then counsel addressed to Commonwealth. The remaining document is the "suspension letter" of January 14, 2020. All are likely in the

possession of Commonwealth. If Commonwealth asserts that it does not have any record of these documents, then it may request that Dr. Manganiello produce in discovery. Absent that assertion of record, these documents are equally available to Commonwealth under *Eigen*.

Request 25 sought "all documents … that you believe support your belief that [Commonwealth's] "protectable business interests are outweighed by [your] interest in earning a living in [your] chosen profession and the general interest of the public," as alleged in Paragraph 61 of your Answer to Motion for Preliminary Injunction." Dr. Manganiello objected to this request by asserting it violated his attorney client privilege and the work product doctrine. To the extent that he did answer this request, he asserted that "responsive Pennsylvania caselaw is equally accessible to [Commonwealth] as it is to [Dr. Manganiello]." I agree with the trial court here, as Dr. Manganiello's answer is non-responsive.

Clearly, Commonwealth is seeking any additional documents which might provide factual support for Dr. Manganiello's claim. In his appellate brief, Dr. Manganiello asserts that he "already provided the factual basis supporting his legal conclusion as well as documents[.]" If this is true, Dr. Manganiello can offer this statement as his answer, and be subjected to any remedies reasonably constructed by the trial court if the court finds this answer to be untruthful or incomplete.

In Interrogatories 15 and 20, Commonwealth wanted information about any attempts at soliciting Commonwealth patients for Dr. Manganiello's separate practice. As set forth in detail above, I believe this interrogatory must be restricted to communications occurring before January 14, 2020. There is no factual dispute that Dr. Manganiello subsequently solicited his former patients for his separate practice.

For all these reasons, I dissent from the majority's memorandum affirming the trial court's blanket refusal to entertain Dr. Manganiello's objections to Commonwealth's discovery requests.